# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **ELLERY PIKE**, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:19-CV-01753-CLM |
| ) | |
| **ANDREW SAUL**, ) | |
| **Commissioner of the Social** ) | |
| **Security Administration,** ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Ellery Pike seeks disability and disability insurance from the Social Security Administration ("SSA") based on several impairments. The SSA denied Pike's application in an opinion written by an Administrative Law Judge ("ALJ"). Pike asks this court to find that the ALJ erred in two ways: (1) the ALJ failed to adequately consider the effects of his obesity, and (2) the ALJ provided inadequate reasons for discrediting his subjective pain testimony. But as detailed below, the ALJ did not err. So the court will **AFFIRM** the SSA's denial of benefits.

**I.    Statement of the Case**

    **A.    Pike's Disability, as told to the ALJ**

Pike was 52 years old at the time of the ALJ's decision. R.20, 183. He has a GED, and his last full-time job was as a certified welder. R.36, 48–49. Before his job as a welder, Pike worked at a warehouse where he stocked inventory, operated a

forklift, and unloaded trucks. R.37. But other than doing a few odd jobs for his brother in summer 2018, Pike has not worked since 2016. R.35–36. Pike claims that he stopped working because he kept falling asleep on the job. R.38.

At the ALJ hearing, Pike testified that he suffers from sleep apnea and has COPD. R.39. He also has diabetes with neuropathy, which causes his legs to swell. R.40–41. And Pike takes the medication Pristiq for depression. R.42.

At one time, Pike weighed 400 pounds. R.50. Pike then had sleeve surgery to lose weight and dropped down to 225 pounds. R.50. But Pike, who is 5'8", has gained much of this weight back. R.39, 50. And he now weighs a little over 300 pounds. R.39. At his height and weight, Pike is considered obese. R.14.

Pike spends most of his day watching television. R.53. And he often visits his mother and brother. R.54. He also grocery shops for himself and his mother. R.44, 436. But Pike can only do basic chores around his house. R.45.

### B. Determining Disability

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |

| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
|---|---|---|
| *Determine Residual Functional Capacity* | | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5). As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis. The intermediate step of determining Pike's residual functional capacity is the most important step here, as all of Pike's challenges flow from the ALJ's decision at this juncture.

### C.  Pike's Application and the ALJ's Decision

The SSA reviews applications for disability benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Pike applied for disability and disability insurance benefits in May 2016, claiming that he was unable to work because of various ailments, including depression, diabetes, obstructive sleep apnea, COPD, and edema/blood clots. After receiving an initial denial in September 2016, Pike requested a hearing, which the ALJ conducted in August 2018. The ALJ ultimately issued an opinion denying Pike's claims in October 2018. R.7–20.

At Step 1, the ALJ determined that Pike was not engaged in substantial gainful activity, and thus his claim would progress to Step 2. R.12.

At Step 2, the ALJ determined that Pike suffered from the following severe impairments: obstructive sleep apnea, diabetes mellitus, COPD, and edema/blood clots. R.12. So the ALJ proceeded to Step 3.

At Step 3, the ALJ found that none of Pike's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. R.13–14. Thus, the ALJ next had to determine Pike's residual functional capacity.

The ALJ determined that Pike had the residual functional capacity to perform "light work," with certain additional limitations:

- Pike can only occasionally climb ramps and stairs;
- Pike can never climb ladders, ropes, or scaffolds;
- Pike can only occasionally balance, stoop or kneel;

4

- Pike can never crouch or crawl;

- Pike can only occasionally be exposed to extreme cold, extreme heat, humidity, vibration, fumes, odors, dusts, gases or peer ventilation; and

- Pike can never be exposed to hazards, such as work at unprotected heights or around dangerous moving machinery.

R.14.

At Step 4, the ALJ found that Pike could not perform his past relevant work. R.18. At Step 5, the ALJ determined that Pike could perform jobs, such as sales attendant, marker, or cashier II, that exist in significant numbers in the national economy and thus Pike was not disabled under the Social Security Act. R.19.

Pike requested an Appeals Council review of the ALJ's decision. R.1–3. The SSA Appeals Council will review an ALJ's decision for only a few reasons, and the Council found no such reason under the rules to review the ALJ's decision. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and it is the decision subject to this court's review.

**II. Standard of Review**

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ

applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III.   Legal Analysis

Pike makes two basic arguments for why the ALJ erred in finding him not disabled. First, Pike argues that the ALJ's decision did not properly account for his obesity and its effect on his impairments. Second, Pike contends that the ALJ failed to adequately articulate his reasons for discrediting Pike's subjective pain testimony.

### A.   The ALJ properly accounted for Pike's obesity.

Although the SSA's regulations do not list obesity as an impairment, an ALJ must consider a claimant's obesity when analyzing a claimant's overall medical condition. *See* SSR 02-1p, 2002 WL 34686281, at *4–7. Thus, in making a residual functional capacity assessment, an ALJ should "consider any functional limitations resulting from the obesity . . . in addition to any limitations resulting from any other physical or mental impairments [identified]." *Id.* at *7. But an ALJ is not to "make assumptions about the severity or functional effects of obesity combined with other impairments." *Id.* at *6.

Pike argues that the ALJ performed only a cursory review of his obesity's effects on his impairments. But the ALJ cited SSR 02-1p and found that although "the claimant's obesity and accompanying co-morbidities [affect] his ability to perform some physical requirements of work," they "are not preclusive of all work activity." R.17. The ALJ also conceded that Pike's "obesity may possibly be the source of [his] complaints of aches and pains, specifically in his back." R.17. And the ALJ considered obesity-related evidence when assessing Pike's residual functional capacity. For example, when considering Pike's functional limitations, the ALJ discussed Pike's BMI, weight loss surgery, and statements about his sedentary lifestyle. R.15–17. Because the ALJ plainly considered Pike's obesity and its interaction with Pike's other ailments, the court discerns no legal error in the ALJ's application of SSR 02-1p.

So the court turns to whether substantial evidence supports the ALJ's obesity-related findings. Pike asserts that his obesity establishes disability because it (1) worsened his sleep apnea, which caused him to fall asleep at work, and (2) produced edema that required him to elevate his legs above his waist. Pike contends that these obesity-related impairments are disabling because they would make him 10% off task and likely require him to miss one day of work each month.

But Pike points to no objective medical finding that he could not work on a sustained basis without falling asleep. And although the doctors who examined Pike

all agree that his sleep apnea is severe, the evidence shows that it is not disabling. For example, Pike told multiple doctors that he refuses to use his CPAP machine. R.434, 455. And Pike's fatigue does not prevent him from balancing his checkbook, paying bills online, or helping out his mother. R. 430, 436, 44. Plus, during Pike's consultative psychiatric exam, he was alert, able to perform basic math, and able to discuss the details of several current events. R.430. So the court finds that the evidence did not compel the ALJ to find that Pike is unable to work because of his sleep apnea.

The court also finds no evidence that required the ALJ to determine that the edema caused by Pike's obesity rendered him disabled. Pike testified that his edema forces him to elevate his legs above his waist to keep the swelling down. R.47. According to Pike, this testimony shows that he would have to elevate his feet above the waist for at least 10% of the workday. And Pike asserts that elevating his feet for 10% of the workday will be unacceptable to the average employer who will usually only tolerate 10% off task behavior (R.62).

But none of the doctors who examined Pike or reviewed his file stated that he needed to constantly keep his legs elevated. In fact, Dr. Krishna Reddy, a state agency medical consultant, concluded that Pike could sit for about 6 hours in an 8-hour workday. R.76. Similarly, Dr. John Nelson, a one-time consultative examiner, noted that the objective evidence suggested that Pike required no limitations for

standing, sitting, or walking. R.440. Thus, substantial evidence supports the finding that Pike's edema was not disabling.

Finally, Pike's argument that he would likely miss one day of work a month because of his obesity-related impairments is speculative and is not supported by much of the objective medical evidence. So the court finds that the ALJ did not err in concluding that Pike's obesity does not prevent him from working.

### B. The ALJ adequately articulated his reasons for discrediting Pike's subjective pain testimony.

Pike next argues that the ALJ erred in assessing his subjective pain testimony. When a claimant relies on subjective testimony regarding pain to support a disability claim, the ALJ must apply the two-step "pain standard":

1. The claimant must present "evidence of an underlying medical condition"; and, if he does,

2. The claimant must either
    a. Present "objective medical evidence confirming the severity of the alleged pain," or
    b. Show "that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain."

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citations omitted). When an ALJ refuses to credit the claimant's subjective pain testimony, "he must articulate specific and adequate reasons" for doing so. *See Hale v. Bowen*, 831 F.3d 1007, 1011 (11th Cir. 1987).

9

Here, the ALJ found that Pike's "medically determinable impairments could reasonably be expected to cause some of [his] alleged symptoms." R.15. But the ALJ discredited Pike's subjective pain testimony, concluding that his "self-reported physical limitations [were] not consistent with the medical evidence." R.18. Pike argues that this finding was in error because the ALJ failed to adequately discredit: (1) his testimony that he had to often elevate his legs, and (2) his testimony that he has breathing problems from his sleep apnea and COPD that cause severe fatigue.

As explained above, Pike points to no objective medical evidence that his edema requires him to constantly elevate his legs above his waist. And two of the doctors who offered opinion evidence found that Pike requires no limitations for sitting. So substantial evidence supports the ALJ's finding that Pike's testimony about the limitations caused by his edema contradicted the objective medical evidence.

And there is evidence that Pike's breathing problems are not as debilitating as he alleges. Again, Pike has not pointed the court to any objective medical opinion that he cannot work on a sustained basis because of an inability to stay awake. Rather, Dr. Reddy thought that Pike could perform light work despite his COPD and severe sleep apnea. R.75-79. And Dr. Nelson stated that there was no objective evidence of limitations caused by Pike's wheezing. R.440. Having reviewed all the clinical findings considered by the ALJ, the court determines that none of the other

10

objective medical evidence in the record compels the conclusion that Pike's breathing problems prevented him from performing the range of light work set forth in the ALJ's residual functional capacity assessment.

In short, the court finds that a reasonable person could view the record evidence and conclude that Pike's statements about the intensity, persistence, and limiting effects of his symptoms conflicted with the objective medical evidence. So even though the court may have made a different credibility determination than the ALJ, the ALJ did not reversibly err. *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) ("The question is not . . . whether ALJ could have reasonably credited [Pike's] testimony, but whether the ALJ was clearly wrong to discredit it.").

## IV.  Conclusion

In summary, the court has reviewed the parties' briefs, the ALJ's findings, and the record evidence and finds that substantial evidence supports the ALJ's decision. So the SSA's denial of benefits is due to be **AFFIRMED**. The court will enter a separate final order that closes this case.

**DONE** this October 27, 2020.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE